IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ERNESTO VILLARREAL JR., | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | Cause No. EP-25-CV-275-KC |
| | § | |
| CHARISMA EDGE, Warden, | § | |
|     Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Ernesto Villarreal Jr., federal prisoner number 21902-511, challenges the execution of his sentence through a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pet'r's Pet., ECF No. 1. His opposed petition is denied.

## BACKGROUND

Villarreal is a 44-year-old federal prisoner formerly confined at the La Tuna Federal Correctional Institution in Anthony, Texas, when he filed his petition. *See* Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. 21902-511, last visited Mar. 8, 2026). He is currently participating in a prerelease residential re-entry program in San Antonio, Texas, with a projected release date of October 30, 2026. *Id*.

Villarreal was the Business Manager for the Valentine Independent School District (Valentine ISD), in Valentine, Texas. *United States v. Villarreal*, 4:24-cr-00165-DC (W.D. Tex.), Presentence Report, ECF No. 49 at ¶ 5. He used two Valentine ISD credit cards to make unauthorized personal purchases totaling $135,746; issued $14,337 in unauthorized checks to himself from Valentine ISD accounts; and wrote $22,659 in unauthorized checks from Valentine ISD accounts to pay his Discover credit card bills. *Id*. at ¶¶ 8, 9, 10, 12. He also generated $162,630 in fraudulent payments to current and former employees for work they did not perform. *Id.* at 15, 16. He then routed those payments to his personal bank accounts—all without the

knowledge or permission of the employees. *Id.* at 15, 16. He used the funds to pay for travel, lodging, home improvements, hardware store purchases, personal cell phone bills, fuel, oil changes, convenience store purchases, Airbnb rentals, personal flights, and various other unauthorized purchases. He caused a total loss to Valentine ISD of $335,373. *Id.* at 18.

Villarreal was indicted by a federal grand jury in Pecos, Texas, for theft from programs receiving federal funds, in violation of 18 U.S.C. § 666 (Count One), and wire fraud, in violation of 18 U.S.C. § 1343 (Counts Two through Nine). *Id.*, Indictment, ECF No. 3. He pled guilty to the indictment without a written plea agreement. *Id.*, J. Crim. Case, ECF No. 60 at 1. His sentencing range was 21 to 27 months based on a total offense level of 16 and a criminal history category of I. *Id.*, Presentence Investigation, ECF No. 49 at ¶ 69. He was sentenced to 27 months' imprisonment on each count to run concurrently. *Id.*, J. Crim. Case, ECF No. 60 at 2. He was also ordered to pay $314,479.36 in restitution. *Id.* at 6.

In his § 2241 petition, Villarreal challenges the calculation of his Good Time Credits (GTCs), and First Step Act Earned Time Credits (FTCs), as well as the Bureau of Prisons' (BOPs) failure to comply with the Second Chance Act and place him in a residential reentry center (RRC) to serve the final 12 months of his prison sentence. Pet'r's Pet., ECF No. 1 at 1–2. He asks the Court to intervene on his behalf and order Respondent to award him all the GTCs and FTCs he has earned, as well as order his placement in an RRC for the maximum time allowed by law.

## STANDARD OF REVIEW

A prisoner may attack "the manner in which his sentence is carried out or the prison authorities' determination of its duration" through a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). To prevail, a

prisoner must show he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

Before a prisoner may file a cognizable § 2241 petition in a federal court, he must generally exhaust all his available administrative remedies. *Fillingham v. United States*, 867 F.3d 531, 535 (5th Cir. 2017). His exhaustion in this context means "proper exhaustion," including his compliance with all administrative deadlines and procedures established by the agency with custody over him. *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion in the context of the Prison Litigation Reform Act).

While there are exceptions to the exhaustion requirement "where the available administrative remedies either are unavailable or wholly inappropriate to the relief a prisoner seeks, or where the attempt to exhaust such remedies would itself be a patently futile course of action," such exceptions apply only in "extraordinary circumstances." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (citations omitted). A petitioner bears the burden of demonstrating such circumstances.

## ANALYSIS

### A. Exhaustion

Villarreal does not allege that he has exhausted his administrative remedies or that any exception to the exhaustion requirement applies. His administrative remedy history shows that he has not filed any administrative remedies while in BOP custody. Gov't's Resp, Ex. 3 (Decl. of Johnna Burrows), ECF No. 5-4 at ¶¶ 10-11. Instead, he asserts that exhaustion is not required because "Habeas Corpus under [28] U.S.C. § 2241 is a constitutional right," and "there can be no rule making which would abrogate them, such as regarding exhaustion of administrative

remedies." Petitioner's Pet., ECF No. 1 at 3. He is mistaken.

Exhaustion does not abrogate a petitioner's ability to pursue relief under § 2241 but instead creates a prerequisite to presenting his claims in court. "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37–38 (1972) (citations omitted); *see also Chavez v. Bragg*, EP-09-cv-6-KC, 2009 WL 506549, at *1 (W.D. Tex. Jan. 21, 2009) (noting that "[e]xhaustion serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency," and that "[w]hen an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted"; further noting that exhaustion "may produce a useful record for subsequent judicial consideration") (internal citations and quotations marks omitted). Indeed, the Fifth Circuit has made it clear that the BOP should be afforded the opportunity to rectify its error if it failed to properly calculate a sentence. *See Smith v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991) (explaining that an agency should be given the opportunity to correct its own errors before a party seeks judicial intervention). Accordingly "[i]n the event that a prisoner feels he has been improperly refused credit for time he has served in … custody, the prisoner must first 'seek administrative review of the computations of [his] credit, and, once [he has] exhausted [his] administrative remedies, [the] prisone[r] may only then pursue judicial review of these computations.'" *United States v. Setser*, 607 F.3d 128, 133 (5th Cir. 2010) (quoting *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992)); *see also Falcetta v. United States*, 734 F. App'x 286, 287 (5th Cir. 2018) (holding that "dismissal for lack of jurisdiction was appropriate because [the petitioner] failed to show that he exhausted his sentencing credit claim fully through

4

the multi-step BOP exhaustion procedure prior to filing his § 2241 petition.").

The Court notes that the BOP was not afforded an opportunity to rectify any purported error as Villarreal did not try to exhaust administrative remedies. Consequently, the Court finds that Villarreal has failed to (1) exhaust his administrative remedies or (2) meet his burden of demonstrating an entitlement to an exception to the exhaustion requirement. The Court also finds that it lacks statutory or constitutional authority to adjudicate his dispute with the BOP. It notes that dismissal on this basis alone is warranted. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies). But even if Villarreal had properly exhausted, the Court would still not grant him the § 2241 habeas relief he seeks.

### B. Good Time Credits (GTCs)

Villarreal, like any federal prisoner, may earn up to 54 days of GTCs for each year of his sentence. 18 U.S.C. § 3624(b)(1). Consequently, he is projected to receive 121 days of GTCs, which consists of 54 days for each of the two full years of his sentence plus 13 days for the final three months of his sentence. Gov't's Resp., Ex. 2 (Bertha Tovar Decl.), ECF No. 5-3 at ¶ 15 & n.4. Application of his projected 121 days of GTCs results in a projected release date of February 27, 2027, without the inclusion of any other credits. *Id.* at ¶ 15 & Attach. 1, 3. Villarreal has not shown that the BOP failed to accurately calculate his Good Time Credits.

### C. Earned Time Credits (FTCs)

The First Step Act creates incentives to encourage prisoners to participate in Evidence Based Recidivism Reduction (EBRR) programs and Productive Activities (PAs). 18 U.S.C. § 3632(d). It gives qualifying prisoners the opportunity to earn ten additional days of FTCs for every

5

30 days of successful participation in EBRR programs and PAs. *Id.* § 3632(d)(4)(A)(i). It allows qualifying offenders at a "minimum" or "low risk" of recidivating to earn an additional five days of FTCs if they did not increase their risk levels over two consecutive assessments. *Id*. § 3632(d)(4)(A)(ii). It permits qualifying inmates to apply FTCs toward prerelease community-based placement in a RRC or home confinement. 18 U.S.C. § 3624(g)(2); 28 C.F.R. § 523.44(b)–(c). And, at the discretion of the BOP Director, it allows qualifying prisoners to apply the FTCs toward their early release to supervision. 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d).

Villarreal arrived at FCI La Tuna on April 22, 2025, was scored as low risk, and began earning ten days of FTCs for every 30 days of his successful participation in EBRR programs and PAs. Gov't's Resp., Ex. 2 (Bertha Tovar Decl.), ECF No. 5-3 at ¶ 12. As of September 20, 2025, he had accrued 151 program days, which equated to 50 FTCs. *Id.* at ¶ 13. Villarreal's projected release date, with the application of his projected GTCs, is February 27, 2027. If his status does not change, the application of his current 50 FTCs will move his projected release date to January 8, 2027. If he earns all possible FTCs for his term of imprisonment and his status does not change, his projected release date may be moved to as early as September 20, 2026. *Id*. at ¶ 15 & Attach. 3. Villarreal has failed to show the BOP has not accurately calculated his ETCs.

### D. Second Chance Act Placement

The Second Chance Act provides a prisoner reentering society after incarceration with resources for post-imprisonment rehabilitation services, with the goal of reducing recidivism and enhancing public safety. Pub. L. No. 110-199, 122 Stat. 657. It authorizes funding for drug treatment, job training and placement, educational services, and other services or support needed to rehabilitate a prisoner and reduce recidivism. *United States v. Wessels*, 539 F.3d 913, 915 (8th

Cir. 2008) (Bright, J., concurring). It also addresses a prisoner's placement in pre-release custody in a community corrections facility such as a halfway house. 18 U.S.C. § 3624(c)(1), (2). It grants the BOP Director the discretion to place a prisoner in a community corrections facility for up to twelve months. *Id*. § 3624(c)(1); *Jones v. Bergami*, No. EP-19-CV-254-DB, 2019 WL 4889735, at *3 (W.D. Tex. Oct. 2, 2019). It "makes no mention of federal courts and does not grant any authority to the federal courts." *United States v. Calderon*, 801 F. App'x 730, 732 (11th Cir. 2020).

The Supreme Court has consistently held that a prisoner has no constitutional right to be confined in any particular place including a community corrections facility. *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.").

The Attorney General—and by delegation the BOP—has exclusive authority and discretion to designate the place of an inmate's confinement. *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971). "[A]ny approach that puts the judicial branch in charge of designating the place of confinement for a federal prisoner—no matter how well justified on utilitarian grounds—collides with 18 U.S.C. § 4082(b), which gives the Attorney General unfettered discretion to decide where to house federal prisoners." *In re Gee*, 815 F.2d 41, 42 (7th Cir. 1987).

Thus, to the extent that Villarreal requests placement in an RRC, the Court has no authority

7

under the Second Chance Act to grant the relief he seeks.

## CONCLUSION AND ORDERS

The Court concludes that Villarreal has failed to exhaust his administrative remedies. The Court accordingly enters the following orders:

**IT IS ORDERED** that Ernesto Villarreal Jr.'s "Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241" (ECF No. 1) is **DENIED** and his cause is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his administrative remedies.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

SIGNED this 10th day of March, 2026.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

8